McKinney, J.,
delivered the opinion of the Court.
Injunction bill, The case is this: An action of slander was brought by McClou'1 aga:iist Humphreys, in the Circuit Court of Knox. The case came on for trial at the June Term, 1857. Fefore proceeding to trial, the counsel of the respective parties most laudably interposed to effect an adjustment of the matter, being impelled to do so, by the shockingly disgusting character of the charge, and the relation existing between the parties; the defendant being the son-in-law of the plaintiff. A compromise was made, in pursuance of which the case was disposed of. And out of a subsequent disagreement between the parties, respecting the terms of the compromise, this suit in equity has arisen.
It is agreed, that, by the terms of compromise, judgment was to be entered up against Humphreys for $500 damages, and costs of srit. The costs to be secured; and, accordingly, the latter contessed judgment for .mat amount, and secured the costs.
But the bill alleges, that it was a distinct and positive term of the agreement, that McCloud should enter a release of the judgment for $500 at the following term of the Court; it being expressly understood, that, in no event, was the money to be collected. This allegation is expressly denied in the answer. The defendant states, in substance, that it was left entirely optional with him, to release said judgment, or to refuse to do so; according to the future conduct and deportment of Humphreys toward him.
It seems that the adjustment was made through the counsel of the parties, who were examined as witnesses, and their statements differ as widely as the allegations of the parties; various other witnesses were examined, whose statements are alike conflicting.
The presiding Judge, ar.d the clerk of the court were ex *237 amined; neither of whom heard anything in relation to a release of the judgment. The confession of judgment as entered up, is absolute and unconditional. This is not a case for the interposition of a Court of Equity.
It presents a somewhat remarkable instance of an honest, and unintentional misunderstanding as to a matter of fact, between the parties; and especially so between counsel, who are gentlemen of the first standing, and whose conduct in the matter seems to have been prompted by motives highly creditable to them as members of the profession.
The directly contradictory allegations of the parties, are equally supported by witnesses of the highest claims to credit, and possessed of equal opportunities of knowing the facts. There is no principle, or rule of evidence, upon which the testimony can be reconciled; nor is there any such preponderance, on either side, as to enable the mind in search of truth, to determine how the fact is. The case must, therefore, be governed by the general principle, that the complainant, who is actor, having failed to make out his case by sufficient proof, is not entitled to the interposition of the Court in his favor.
Again: It was the fault of the complainant that the evidence of the terms of adjustment, was not put in such form as to preclude all future controversy as to the true import of the agreement. And this negligence cannot be made a ground upon which to invoke the active interference of a Court of Equity. And furthermore, we have had occasion to say, heretofore, that such investigations as the present, are to be discouraged by a Court of Equity. They are, from their very nature, incapable of a satisfactory determination; and, more than this, they do not tend to enhance the moral influence of the administration of justice, or to elevate the profession in the eyes of the community.
We are of opinion, therefore, that the Chancellor erred in decreeing for the complainant; and the decree will be reversed, and the bill dismissed, but without costs.